UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**RICKY H. IVORY, d/b/a**
**SKATE TAMPA.COM,**

      **Plaintiff,**

v.                                       Case No. 8:07-cv-2354-T-TBM

**BIRGIT HOLME, d/b/a**
**SQUIGGYCLASSICINLINE.COM,**

      **Defendant.**
_____/

**O R D E R**

THIS MATTER is before the Court on **Defendant's Motion for Summary Judgment** (Doc. 64) and Plaintiff's Response (Doc. 68). Arguments were held January 15, 2009. Thereafter, the court permitted some limited additional discovery and the filing of supplemental matters. Supplemental memoranda were filed. (Docs. 104, 105). A number of affidavits were also filed.[1]

I.

By way of pertinent procedural history, this litigation was instituted in December, 2007, by the filing of a single count complaint for infringement of copyrights pursuant to 17 U.S.C. § 101, *et. seq.,* wherein statutory damages and injunctive relief were sought. (Doc. 1).

---

[1]*See* (Docs. 70, 82, 87, 93, 96). Defendant has moved to strike the Affidavits of Joseph Wagner and Robert R. Livingston (Docs. 91, 102) to which Plaintiff responded (Docs. 92, 106). Upon consideration, the motion to strike untimely affidavits (Doc. 102) is **granted.** The motion (Doc. 91) is **denied as moot.**

In his Complaint, Plaintiff Ricky H. Ivory alleges that he is the sole owner of SKATE TAMPA.COM and the President of a non-profit inline skate club, The Tampa Bay Road Rollers. Plaintiff pleads that he is the "copyright owner or licensee with exclusive rights under United States copyright with respect to certain copyrighted pictures, video, data text, and artwork."[2] (Doc. 1, ¶7). He alleges that the Defendant, Birgit Holme, without his permission or consent "has used and continues to use online media Copyrighted material from Plaintiff's website and has distributed to the public and has placed selected items onto her own personal website and as a result has collected fees from the public." (Doc. 1, ¶9). Plaintiff amended his complaint to include a claim for actual damages pursuant to 17 U.S.C. § 504, in addition to the statutory damages and injunctive relief initially requested. (Doc. 74). On December 5, 2008, Defendant filed her motion for final summary judgment.

II.

A.

The court shall grant summary judgment for the moving party only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court may look to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," in determining whether summary judgment is appropriate. Fed. R. Civ. P. 56(c). The movant bears the exacting burden of demonstrating that there is no dispute as to any material fact in

---

[2] However, the record reflects that Plaintiff did not register his copyright until October 30, 2008.

the case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);  *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 324; *Howard v. BP Oil Co.,* 32 F.3d 520, 524 (11th Cir. 1994).  The non-movant must designate specific facts showing a genuine issue for trial beyond mere allegations or the party's perception.  *Perkins v. School Bd. of Pinellas County*, 902 F. Supp. 1503 (M.D. Fla. 1995).  It must set forth, by affidavit or other appropriate means, specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e).

When deciding a motion for summary judgment, "[i]t is not part of the court's function . . . to decide issues of material fact, but rather determine whether such issues exist to be tried . . ." and "[t]he court must avoid weighing conflicting evidence or making credibility determinations."  *Hairston*, 9 F.3d at 919 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).  The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be tried.  *Hairston*, 9 F.3d at 921; *see also Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997).  All the evidence and inferences from the underlying facts must be viewed in the light most favorable to the nonmoving party.  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997).

B.

To establish copyright infringement, the analysis begins with a two-part consideration: (1) does the plaintiff own a valid copyright; and (2) whether the defendant

copied constituent elements of the original portion of the work. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 548 (1985). A plaintiff asserting a claim for copyright infringement bears the burden of proving ownership of a valid copyright. *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999). To satisfy this burden, a plaintiff must demonstrate that his work is original and that the statutory requirements have been met. *Id.; see also Bateman v. Mnemonics*, 79 F.3d 1532, 1541 (11th Cir. 1996). A plaintiff can meet this burden by producing a certificate of copyright registration.[3] The burden would then shift to a defendant to demonstrate that the work was not "original" or worthy of copyright protection. *Id.* Even given the existence of a valid copyright, a plaintiff must then establish that the defendant copied the original work. "Not all copying, however, is copyright infringement." *Feist Publ'n, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). In that regard, facts are not copyrightable. *Id.* at 344. Once a plaintiff establishes a valid copyright and original portions of it have been copied by a defendant, a defendant may still defeat a claim of infringement by establishing that its use of the copyrighted material was a "fair use" as that term is defined in The Copyright Act of 1976 ("Act"). *See* 17 U.S.C. § 107.

III.

By her motion for final summary judgment, Defendant asserts that she is entitled to judgment as a matter of law because Plaintiff has suffered no rationally-recoverable damages;

---

[3] 17 U.S.C. § 410(c) provides, in pertinent part, that "[i]n any judicial proceedings the certificate of a registration made before or within five years after publication of the work shall constitute prima facie evidence of the validity of the copyright and the facts stated in the certificate."

4

Plaintiff has failed to offer evidence of any "website content" for which he has secured a registered copyright; Plaintiff cannot prove actual damages and is precluded from asserting claims for statutory damages or attorneys' fees;[4] Plaintiff's registered copyright is void for fraud on the U.S. Copyright Office; and Plaintiff cannot prove infringement of copyrightable material.

In response, Plaintiff asserts that he has suffered damages in the form of lost sponsors and perks/benefits and an inability to successfully promote future events, as well as loss of good will associated with his business. Plaintiff argues that the Court should deny Defendant's motion for summary judgement because issues of material fact exist concerning the nature and amount of Plaintiff's damages; the extent to which Defendant benefitted from having Plaintiff's content on her website; and whether Plaintiff should be granted an injunction against Defendant to prevent further infringement. Plaintiff's response clarifies that the copyrighted material in dispute in this suit is: (1) the map of the race course which he created; (2) the race results data "compiled in a unique manner;" and (3) a certain video for which he claims to have had an exclusive license.

Certain facts are undisputed. The Plaintiff and Defendant both assist in the organization of in-line skating races. The "Squiggy Classic Inline" race is an annual in-line skating event at Flatwoods Wilderness Park in Tampa, Florida. Plaintiff helped organized the

---

[4] The court does not address in great detail the issue of Plaintiff's entitlement to statutory fees, pursuant to 17 U.S.C. § 504(ii), as Plaintiff conceded at the hearing that the late registration of the copyright which did not occur until late October, 2008, precludes the recovery of such statutory damages. Similarly, the Court would find that Plaintiff would be precluded from recovering fees under 17 U.S.C. § 504 for the same reason of the late registration.

2006 and 2007 Squiggy Classic Inline races. (Doc. 64-2 at 29). Plaintiff made the decision not to organize the 2008 Squiggy Classic Inline "because [he] was involved in a car accident in August that took [him] out of the sport." (Doc. 64-2 at 30)[5] In 2007, Plaintiff met with Defendant to discuss "the turnover of Squiggy to Birgit." (Doc. 64-2 at 95). Plaintiff told Defendant, "if you create a website, I'll link it to SkateTampa.com." *Id.* Neither Plaintiff, nor SkateTampa.com, claim to collect profits from involvement in any skating race, including the "Squiggy Classic Inline." (Doc. 64-2 at 22, 28). As for the materials to which Plaintiff is claiming infringement of his copyright, a side-by-side comparison of Plaintiff's map and the map on Defendant's "squiggyclassicinline.com" website reveals that while similar, they are not identical. *See* (Doc. 64-2 at 58), (Doc. 68-5 at 4). By Plaintiff's account, the 2007 race results posted on his website were compiled by Plaintiff with the assistance of a group of volunteers tracking the finishers. The order of finish was then loaded on his computer and posted on his website the following day. (Doc. 64-2 at 43-5). As for the video, Plaintiff acknowledges that the film of the Squiggy 2007 race was made by another, one Joel Freedman, and then uploaded by Mr. Freedman to his website. Plaintiff claims to have a verbal license from the creator to use the video at the time of the alleged infringement and claims he was told by Freedman that he was the only person to have received a copy of the video. (Doc. 64-2 at 9-10, 69-70). Defendant admits to not having written or oral permission from the licensor of the video to use same. (Doc. 68-8 at 7). However, Defendant denies that she took the video from SkateTampa.com's website. (Doc. 68-8 at 7). In fact, Defendant

---

[5] Plaintiff also testified that there were additional factors contributing to his decision to not be involved with the 2008 Squiggy Classic Inline race, including raised prices and safety concerns. (Doc. 64-2 at 96-7)

denies that she has ever taken anything from Plaintiff's website. Plaintiff registered his "website content" with the Copyright Office claiming creation of "2-D artwork, photograph(s), map/technical drawing, [and] text." The registration was effective October 30, 2008. *See* (Doc. 82-5).

In her motion, Defendant concedes that there remain questions of fact with regard to whether or not she misappropriated any content from Plaintiff's website, and whether Plaintiff's "copyrighted" material includes any content that she actually misappropriated onto her website. However, she urges that even if she did infringe upon copyrighted material, the claim fails as a matter of law because Plaintiff has suffered no rational or actual damages and he is precluded from claiming statutory damages in the circumstances of this case.[6] By her argument, Plaintiff's inability to prove the essential element of damages is fatal to his infringement claims, and thus his claims must fail as a matter of law.

---

[6]Defendant argues Plaintiff does not earn any profit from organizing skating races. "The only basis for copyright damages that Mr. Ivory has articulated in discovery is Ms. Holme's failure to produce a list of 2008 race participants during discovery in this case." (Doc. 64 at 10). This resulted in Plaintiff not obtaining the e-mail addresses of the 2008 race participants which Plaintiff contends belong to him. Defendant submits that the loss of other people's e-mail addresses is not a cognizable copyright injury, and, in any event, is more likely attributable to Plaintiff's decision not to organize the 2008 race, as opposed to being caused by any alleged infringement. In response, Plaintiff filed an affidavit in which he sets forth the "damages" he sustained as a result of Defendant's infringement. Specifically, Plaintiff claims he lost indirect benefits including, among other things, free or discounted hotel stays, free pizza, free inline skates, gifts from sponsors, and free tickets to theaters, clubs and concerts. Additionally, Plaintiff asserts that the good will associated with his business has suffered, as well as his ability to promote future race events. Plaintiff also contends that although he has not charged for his services in the past, his ability to charge for his organizational and promotional services for future events has been damaged by the infringement.

7

A plaintiff must demonstrate a "causal connection" between an infringement and an injury to the market value of the plaintiff's copyrighted work at the time of the infringement. Initially, however, the inquiry is whether (1) plaintiff holds a valid copyright; and (2) whether defendant copied the original work. *See Montgomery,* 168 F.3d at 1294; *Feist, supra*. Here, despite Defendant's best efforts, Plaintiff demonstrates that there is a question of fact regarding his actual damages caused by the alleged infringement. In turn, Defendant establishes that even if Plaintiff has suffered a loss, there is a question of fact as to the causal connection between Plaintiff's claims of loss and the alleged infringement in this case. Therefore, Defendant is not entitled to summary judgment on the claim that Plaintiff has suffered no damages.

Defendant also claims that Plaintiff's copyright is "void" and secured as a result of "fraud." In that regard, Defendant urges that Plaintiff's copyright registration certificate references an initial use of the copyrighted "website content" to be January 1, 2004. However, he testified in deposition that the "Squiggy Classic" was created by third parties and that the first year the "Squiggy Classic Inline" race was operated was in 2006. Defendant argues that this discrepancy voids the copyright registration. In response, Defendant urges that Plaintiff, who has never even viewed the materials sent to the Copyright Office, fails to offer any competent proof to support her assertions. I agree. Plaintiff's claim of fraud is wholly unsupported on this motion and summary judgment on this basis is denied.

As noted above, Plaintiff maintains the copyrighted materials which Defendant allegedly copied and used on her website are the map of the race course, the 2007 race results which he claims was compiled in a unique manner, and a video for which Plaintiff claims a

8

license for him alone to use. (Doc. 68 at 5-6). In essence, Defendant argues that Plaintiff is not entitled to copyright protection on any of these items. Defendant urges that Plaintiff's work must be "original" in order to qualify for copyright protection and that facts are not copyrightable. She submits that the map of the race route fails to qualify because the map was created by Plaintiff's tracing of another map and his addition of landmarks and mile-markers using a third party's Global Positioning System (GPS) measurements. Similarly, Defendant contends that the 2007 race results were not authored by, nor "original" to, Plaintiff because they were compiled by a group of volunteers and merely set forth facts concerning the order of finish of the 2007 race. As such, the facts are not copyright protected.[7] Although not expressly addressed in her motion, Defendant similarly argues that the video of the 2007 Squiggy Classic Inline race allegedly copied by Defendant and uploaded to her website was not the creation of Plaintiff and not copyright protected.

In response to Defendant's claims that the copyrighted material is not "original," Plaintiff testified at deposition that while the basic map of the park area at which the race was held had been in existence for quite a while, he created a depiction of the race route by adding to that map dotted lines depicting the race route, certain landmarks, and mileage notations

---

[7] Defendant also points out that while Plaintiff claims he secured a copyright for the race results, he did not register his copyright until October, 2008, approximately ten months after filing his complaint for copyright infringement. Although the late filing of the registration precludes Plaintiff's claim for statutory damages, it nevertheless does not otherwise bar a valid copyright claim as entitlement to copyright vests upon creation of the work, not upon registration with the Copyright Office. *See Montgomery,* 168 F.3d at 1288 ("For original computer programs and other original works of authorship created after 1977, copyright automatically inheres in the work at the moment it is created without regard to whether it is ever registered. [However,] in order to bring an action for copyright infringement, the author must first register the copyright.")

determined through the use of a GPS device. As for the 2007 race results, he claims to have created the procedure for compiling and organizing the race results and that this was done for display on his SkateTampa.com website. As for the video, while he acknowledges that it was created by another, he believes Defendant breached his license to use the same by copying it to her website. Plaintiff argues that in cases where there is no direct evidence of copying, a plaintiff can prevail by showing that "the defendant had access, and produced something 'substantially similar' to the copyrighted work." *Leigh v. Warner Brothers, Inc.*, 212 F.3d 1210 (11th Cir. 2000). Plaintiff submits that an unauthorized taking of his materials is clearly established where, as here, there is evidence of word-for-word race format from his website subsequently appearing on the Squiggy website, as did a map created by him, the race results for the 2007 race he compiled through unique means and listed on his website, and a video for which he holds a license and which was displayed on his website. Further, he proffers that Defendant had access to his website and that at one point, the words, "Maintained by Birgit Holme" appeared on the Squiggy website." Because of the factual disputes, he urges the motion should be denied.

The 2007 race results from the Squiggy Classic Inline race for which Plaintiff claims copyright protection consists of a list of race participants with their finish times, in order from first to last place. While Plaintiff concedes that facts themselves are not copyrightable, he asserts that his compilation of the facts are protected by copyright. At the hearing on Defendant's motion, Plaintiff's counsel argued the extraordinary lengths that Plaintiff and others had to go to in order to gather the data regarding the race finishes in correct order with

their respective times. Thus, it is his "compilation" of this data for which Plaintiff claims copyright protection.

The Act defines "compilation" as "a work formed by the collection and assembly of pre-existing materials or of data that are selected, coordinated or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. Further, 17 U.S.C. § 102(b) provides that "in no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated or embodied in such work." The Eleventh Circuit, citing *Feist,* 499 U.S. at 359-60, has noted that "a work comprised only of facts is copyrightable to the extent that such facts are selected, arranged, or organized (and thus presented) in an original way. This protection is limited, however, and extends only to the work as a whole, and only if the selection, coordination, or arrangement is sufficiently original to be copyrightable." *MiTek Holdings, Inc. v. Arce Eng'g Co., Inc.,* 89 F.3d 1548, 1558 (11th Cir.1996); *Bell South Advertising & Pub. Corp. v. Donnelley Info. Pub., Inc.*, 999 F.2d 1436, 1440 (11th Cir. 1993) (en banc) ( "a compiler's selection, arrangement and coordination, if original, are the only protected elements of a factual compilation").

Plaintiff broadly submits that his compilation of the data is worthy of copyright protection; however, the Court finds little which is unique in the listing of race results in order from first to last finisher with their accompanying times. Although the gathering of that data may have required hard work, that is precisely the "sweat of the brow" argument that the

11

Supreme Court rejected in *Feist*.[8] As the *Feist* court stated, "[f]acts are never original, so the compilation author can claim originality, if at all, only in the way the facts are presented. . . . Not every selection, coordination, or arrangement will pass muster. This is plain from the statute. It states that to merit protection, the facts must be selected, coordinated, or arranged 'in such a way' as to render the work as a whole original. This implies that some 'ways' will trigger copyright, but that others will not." *Feist*, 499 U.S. at 358. In *Feist,* the Supreme Court found the author's arrangement of names and addresses in a white pages directory in alphabetical order to be wholly lacking in creativity. The Court described the arrangement as "an age-old practice, firmly rooted in tradition and so commonplace that it has come to be expected as a matter of course." *Id.* at 363. On this motion, I find that the method and means used by Plaintiff to compile the race results are not copyright protected, nor are the facts so collected. To the extent that the Plaintiff's presentation of the results arguably reflects some originality, there remains a question of fact whether his presentation of the same is an original work deserving of such protection. Coupled with the dispute over damages and causation, this issue will be left for the jury to decide at trial. Accordingly, the motion is denied on this claim.

Regarding the race map, while Plaintiff concedes that Defendant's reproduction of the map is not an exact copy, he argues that it is "substantially similar" so as to be considered an infringing copy. In response, Defendant asserts that the map is not an original work of

---

[8] The Court noted, "[i]t may seem unfair that much of the fruit of the compiler's labor may be used by others without compensation. . . . [H]owever, this is not 'some unforeseen byproduct of a statutory scheme.' It is, rather, 'the essence of copyright,' and a constitutional requirement. The primary objective of copyright is not to reward the labor of authors, but 'to promote the progress of science and useful arts.'" *Feist*, 499 U.S. at 349 (citations omitted).

authorship because the Plaintiff copied it from another map and the Plaintiff acknowledges that the maps are different. Additionally, Plaintiff's use of a third party's Global Positioning System ("GPS") measurements demonstrates his lack of original authorship.

Historically, most courts have treated maps solely as compilation of facts, but the Act categorizes maps not as factual compilations, but rather as "pictorial, graphic, and sculptural works"–a category that includes photographs and architectural plans. *Mason v. Montgomery*, 967 F. 2d 135 (5th Cir. 1992).

As a general principle, simply because a work is copyrighted does not mean every element of that work is protected. The threshold question is what characteristics of a plaintiff's design has gained copyright protection, if any. If a work is not original, then it is not protected. Likewise an element within a work may be unprotectible even if other elements, or the work as a whole, warrant protection. Some material is unprotectible because it is in the public domain, which means that it is free for the taking and cannot be appropriated by a single author even though it is included in a copyrighted work. *See Boisson v. Banian, Ltd.,* 273 F.3d 262 (2d Cir. 2001). Thus, a comparison must be done with regard to only those portions of the map which are original.

In the instant matter, Plaintiff concedes the map of Flatwoods Park and the roads depicted therein are not original, but rather copied from another source. However, he submits that the arrows, markers, cones, mileage notations, and start/finish notations along the dotted race route are his original works of authorship deserving of copyright protection.[9] While

---

[9] Some courts have found that "[t]rivial elements of compilation and arrangement, of course, are not copyrightable since they fall below the threshold of originality. For example, it is well-settled that copyright of a map does not give the author an exclusive right to the

urging that there is nothing unique about Plaintiff's map, Defendant also argues that the map she created is different--with different mileage notations and a different number of cones--such that a comparison of the "copyrightable" material reflects that her map was not an infringing copy, and regardless, even if it was a copy, her use of same was a "fair use" and therefore not in violation of Plaintiff's copyright. While this is a close issue, I find sufficient similarities in the creative portions of the maps to allow Plaintiff's claim to survive summary judgment. Similarly, I find a question of fact exists on Defendant's claim under the Fair Use Doctrine. *See* 17 U.S.C. § 107; *Pacific and Southern Co., Inc. v. Duncan*, 744 F. 2d 1490 (11th Cir. 1984).

> In relevant part, 17 U.S.C. § 107 provides:
>
> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work ... for purposes such as criticism, comment, news reporting, teaching, scholarship, or research, is not infringement of copyright. In determining whether the use made of a work in any particular case is a fair use to be considered shall include–
>
> > (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> > (2) the nature of the copyrighted work;
> > (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> > (4) the effect of the use upon the potential market for or value of the copyrighted work.

Because fair use is an affirmative defense to a claim of infringement, a defendant carries the burden of proof on the issue. *American Geophysical Union v. Texaco, Inc.* 60 F.3d 913, 918

---

coloring, symbols, and key used in delineating boundaries of and locations within the territory depicted." *U.S. v. Hamilton*, 583 F.2d 448, 451 (9th Cir. 1978) (citing *Christianson v. West Pub. Co.*, 149 F.2d 202, 203-04 (9th Cir. 1945)).

(2d Cir.1995). Fair use is a mixed question of law and fact and these factors are not meant to be exclusive. *Harper,* 471 U.S. at 560; *see also Pacific & Southern Co.,* 744 F.2d at 1495 n.8. Thus, in appropriate cases, the court may rule as a matter of law that a challenged use is not a fair use. 471 U.S. at 560. However, "[b]ecause the fair use question is so highly dependent on the particular facts of each case, courts . . . have usually found it appropriate to allow the issue to proceed to trial." *Maxtone-Graham v. Burchaell*, 803 F.2d 1253, 1258 (2d Cir.1986).

Here, I find disputed issues of fact on the enumerated factors which preclude a ruling as a matter of law. For instance, on the first factor, the Supreme Court has clarified that a "commercial or profit-making purpose" is presumptively unfair. *Sony Corp. of Am., Inc. v. Universal Studios, Inc.*, 464 U.S. 417, 451 (1984); *Harper*, 471 U.S. at 562. However, "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper*, 471 U.S. at 562.

The map here was posted on a website which recruited inline skaters to participate not only in the Squiggy Classic Inline race, but also other races. There is some claim by both Plaintiff and Defendant that neither takes monies for organizing such races, however, both claim some gain, monetary or in-kind, tangible and intangible, derived from their websites. Plaintiff claims he has lost perks and goodwill by the use of "his" race map and race results. This suggests that there is a commercial aspect to each party's venture. In sum, I find unresolved fact disputes regarding the "purpose and character of the use" factor. Similarly, the second factor regarding the nature of the copyrighted work is in dispute. Defendant argues

that the nature of the copyrighted work is educational. Plaintiff suggests its use on the offending website was for promotional purposes.

Lastly, Plaintiff asserts that the videotape containing footage of the 2007 Squiggy Classic Inline race which was taken by Joel Freedman is copyright protected. According to Mr. Freedman, his production company sponsored and videotaped the 2007 race and created a finished video of the race edited to music. *See* Affidavit of Freedman (Doc. 68-7). In exchange, the company received sponsorship recognition. By his account, the video was licensed to Plaintiff under a verbal agreement "for the purposes of documenting the event for historical archives and promoting futures events." *Id.*

The Copyright Act provides that copyright ownership "vests initially in the author or authors of the work." 17 U.S. § 201(a). The Act creates an exception for "works made for hire." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). If the work is for hire, "the employer or other person for whom the work was prepared is considered the author" and owns the copyright, unless there is a written agreement to the contrary. *See* 17 U.S.C. 201(b). Pursuant to 17 U.S.C. § 101, a work is "made for hire" when:

> (1) a work is prepared by an employee within the scope of his or her employment; or
>
> (2) a work is specially ordered or commissioned for use as a contribution to a collective work, as part of a motion picture or other audiovisual work, . . . , as a compilation, as an instructional test or . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

Here, there is no evidence that the videographer, Mr. Freedman, was an employee of Plaintiff. Further, there is no evidence of a written agreement that the video was to be a "work for hire." Thus, because Plaintiff was not the author of the work, and it cannot be considered a "work for hire," the video would not be protected by copyright.

IV.

For the foregoing reasons, it is **ORDERED** that **Defendant's Motion for Summary Judgment** (Doc. 64) is **granted in part and denied in part** as set forth herein.

**Done and Ordered** at Tampa, Florida, this 27th day of February 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record